IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MINISTER YAHOSHUA-YISREAL:
YAHWEH, SECURED PARTY CREDITOR,
EXECUTOR/BENEFICIARY, Ex Rel. AZEZ
WESLIN ELLIS,

                **Plaintiff,**

v.                                             Case 2:12-cv-02897-JDT-cgc

CITY OF MEMPHIS, A.C. WHARTON,
POLICE CHIEF TONEY ARMSTRONG,
D. DAY, SHELBY COUNTY SHERIFF
WILLIAM OLDHAM, DISTRICT ATTORNEY
GENERAL AMY P. WEIRICH, and JANE
and JOHN DOES 1-20.

---

**REPORT AND RECOMMENDATION ON IN FORMA PAUPERIS SCREENING
PURSUANT TO 28 U.S.C. § 1915 AND ON CERTIFICATION OF APPEALABILITY
PURSUANT TO RULE 24 OF THE FEDERAL RULES OF APPELLATE PROCEDURE**

---

Before the Court is Plaintiff, who identifies himself as "Minister Yahoshua-Yisrael:Yahweh Secured Party Creditor; Executor/Beneficiary Ex Rel. Azez Weslin Ellis"'s[1] pro se Amended

---

[1] The style of Plaintiff's case indicates that Yahoshua-Yisrael: Yahweh intends to pursue a claim ex rel. Azez Weslin Ellis. The District Court has previously considered a complaint filed by "Minister Yahoshua-Yisrael: Yahweh Secured Party Creditor UCC 1?207-308 Ex Rel. AZEZ WESLIN ELLIS." *Azez Weslin Ellis v. City of Memphis*, Case 2:12-cv-02896-JDT-cgc (W.D.Tenn. October 10, 2012). On January 31, 2013, the District Court ordered as follows: "The Clerk is directed to correct the docket to reflect Plaintiff's alias [of Azez Ellis], which is likely his true name. . . . Ordinarily, a secured creditor does not have standing to sue on behalf of a debtor. See Fed. R. Civ. P. 17(a) (suit must be brought in name of real party in interest). Because it appears that Plaintiff and Ellis are the same person, these allegations will be disregarded." It is recommended that the District Court order the Clerk to do the same in the instant case.

1

Complaint (Docket Entry "D.E." #4), which must be screened pursuant to 28 U.S.C. § 1915 ("Section 1915") as Plaintiff is proceeding in forma pauperis. (D.E. #3). The Section 1915 screening has been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #5). For the reasons set forth herein, it is recommended that Plaintiff's Amended Complaint be DISMISSED pursuant to Section 1915 for failure to state a claim upon which relief may be granted and that leave to proceed in forma pauperis on appeal be DENIED pursuant to Rule 24 of the Federal Rules of Appellate Procedure.

**I. Background**

On November 20, 2012, Plaintiff filed the instant Amended Complaint. Plaintiff named as Defendants the following: City of Memphis ("City"); A.C. Wharton, City Mayor ("Mayor Wharton"); Police Chief Toney Armstrong ("Chief Armstrong"); Shelby County Sheriff William Oldham ("Sheriff Oldham"); Memphis Police Officer D. Day ("Officer Day"); District Attorney General Amy P. Weirich ("Weirich"); and, Jane and Jone Does 1-20.[2]

Plaintiff alleges that, on the morning of September 27, 2012, he was driving his five-year-old daughter to school when he was pulled over by an armed police officer. (Am. Compl. at 4 ¶¶ 2, 1). "[S]econds later, . . . more armed uniformed individual[s]" arrived in vehicles marked as "MEMPHIS POLICE." (*Id*. at 4 ¶ 1). Plaintiff alleges that he inquired of Officer Day as to the reason for the traffic stop, to which Officer Day first advised that Plaintiff's "plate tags were not valid." (*Id*. at 4 ¶ 2). Plaintiff disputed this allegation and states that Officer Day "ran the plates

---

[2] Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against unnamed does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that Plaintiff's Amended Complaint against Jane and John Does 1-20 be dismissed.

three times before the tags came back valid." (*Id*. at 4 ¶2 & 6 ¶9)

Plaintiff informed Officer Day that he was "Not For Hire" and that he was "a free man traveling under the rights of the Constitution." (*Id*. at 4 ¶2). Plaintiff then attempted to contact "friends and countrymen to alert them of [his] location and to inform them of [his] distress." (*Id*.) Officer Day ordered him to end the telephone call. (*Id*.) Officer Day then asked for his identification, to which Plaintiff states that he provided "birth certificates, court order name changes, and affidavits of identities." (*Id*. at 2 ¶ 3). Plaintiff also informed Officer Day that he considered driver's licenses to be "the mark of the beast" and against his religion, that he was the executor of his estate, and repeated that he was not for hire. (*Id*. at 5 ¶ 4). Officer Day told Plaintiff that they were "not having this conversation." (*Id*.)

Plaintiff again inquired about the reason for the traffic stop, to which Officer Day responded that Plaintiff pulled in front of him without a turn signal. (*Id*. at 4-5 ¶ 3). Plaintiff alleges that he did not pull in front of Officer Day but always stayed in the right lane, that Officer Day passed him on the left, that Officer Day looked into his truck while passing by him, and that Officer Day then slowed back down to pull him over. (*Id*. at 4-5 ¶¶ 3, 5) Plaintiff alleges that Officer Day did not have probable cause to pull him over but instead that he committed "[r]acial [p]rofiling" of a "Hebrew Man." (*Id*. at 5 ¶ 4a).

Plaintiff further claims that he was not issued a citation for any traffic violation but was nonetheless ordered out of his truck. (*Id*. at 5 ¶ 5). Plaintiff states that he did not consent to exiting his vehicle. (*Id*. at 7 ¶ 14). Plaintiff alleges that, by this point, "[e]ight additional police cars" arrived at the scene and that he was "pulled from the car forcefully" by another officer. (*Id*. at 6 ¶ 7). He alleges that his five-year-old daughter was first "snatched" from the back seat and that he

3

was then "snatched" from the truck and handcuffed. (*Id*.) He alleges that his "religious necklace" worth $1,000.00 was also "snatched off" of his neck. (*Id*.)

Plaintiff alleges that he also did not consent to a search of his vehicle but that the officers "proceeded to turn off the truck," "take the key out [of] the ignition," and "unlock[] the glove compartment with no consent" and no search warrant. (*Id*. at 7 ¶¶ 14-15). Officers proceeded to search the truck and located "a brass knuckle . . . locked in the glove compartment buried under manuals and registration not visible in sight for anyone." (*Id*. at 7 ¶ 15).

Plaintiff claims that he was placed in the back of the police car without being advised of his *Miranda* rights. (*Id*. at 6 ¶ 7). Plaintiff alleges that he requested that the air conditioning be turned on because it was hot and he had difficulty breathing but that Officer Day denied his request. (*Id*. at 7 ¶ 17). Plaintiff also alleges that he requested medical attention "due to being slammed on the car and placed in a hot squad car for over an hour with no air" but that Officer Day also denied this request. (*Id*. at 7 ¶ 18).

Plaintiff alleges that, at some point during this encounter with law enforcement, an officer told him that he does not have any rights and that the Constitution does not apply to his rights. (*Id*. at 6 ¶ 8). Plaintiff claims that Officer Day "made anti-religious slurs mocking [his] religious beliefs and trying to incorrectly tie [him] to being a 'Sovereign Citizen' or protocol/movement associated with the aforementioned term." (*Id*. at 6 ¶¶ 10, 12). Plaintiff informed Officer Day that "this was false" and that he was "a Hebrew Minister and Son of Yahweh on the earth as indicated on the Minister Affidavit provided when initially stopped along with court order name change and birth certificate." (*Id*. at 6 ¶¶ 11-12). Plaintiff further states that his arrest was recorded on audio and video from police squad car cameras. (*Id*. at 8 ¶ 23).

4

Plaintiff alleges that he was ultimately "hauled off to jail" and that his five-year-old daughter was left "on the side walk." (*Id*. at 6 ¶ 7). Plaintiff claims that he tried to inform nurses at the county jail of his injuries but that he was "interrupted" by Officer Day who told them that he "was a sovereign" and his medical attention was denied. (*Id*. at 7 ¶ 19). Plaintiff states that, while inmates' handcuffs are usually removed once inside the jail, Officer Day refused to remove his handcuffs, which he alleges caused additional injury to his hands and his back. (*Id*. at 8 ¶ 20). Plaintiff states that Officer Day also "laughed and continue[d] to make religious slurs." (*Id*.) Plaintiff claims that, despite the fact that officers were informed of his "Religious, legal, and God given names," they continued "to process false affidavits in the incorrect name," which Plaintiff asserts denied him "the right to self-identify, self-determination, religious freedom, and free will." (*Id*. at 8 ¶¶ 21, 23). Plaintiff states that, while incarcerated, he was "forced to take unknown drugs/injections or be placed in solitary confinement and denied bail" and "forced to accept an illegal pat down by male and female Officers grabbing [his] private area and entire body," which he believes to be a "form of [rape]" and which was against his religious faith. (*Id*. at 8 ¶ 22).

**II. Section 1915 Screening**

Pursuant to Section 1915, in proceedings in forma pauperis, notwithstanding any filing fee, or any portion thereof, that may have been paid, the Court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

To state a claim upon which relief may be granted, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Such a

5

statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

**A. Counts I**

Count I of Plaintiff's Amended Complaint alleges that "known and unknown" Defendant Officers,[3] "including but not limited to" Officer Day, arrested Plaintiff without probable cause in violation of Section 1983 and the Fourth Amendment to the United States Constitution. (Am. Compl. ¶ 32).

To successfully plead a Section 1983 claim, a plaintiff must allege (1) the deprivation of a

---

[3] For the reasons set forth above, *see*, *supra*, n.2, it is recommended that all claims against "known and unknown DEFENDANT OFFICERS" are additionally subject to dismissal pursuant to Section 1915 because suits cannot be pursued against unnamed parties.

right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Section 1983 itself "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).

"To succeed on a Fourth Amendment claim for an unreasonable seizure/unlawful arrest, plaintiffs must show that there was a seizure and that it was unreasonable." *Alexander v. Beale Street Blues Co., Inc.*, 108 F. Supp. 2d 934, 941 (6th Cir. 1999) (quoting *Brower v. County of Inyo*, 489 U.S. 539, 599 (1989)). To determine if a seizure is reasonable, a court must look to whether the officers had probable cause to seize the individual. *Alexander,* 108 F. Supp. 2d at 942 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Alexander,* 108 F. Supp. 2d at 942. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Id.*

Even though the question of whether probable cause existed generally presents a question of fact, Plaintiff must satisfy the pleading requirements to proceed with such a claim. In the instant case, Plaintiff has not alleged sufficient facts to adequately plead that his arrest was not based upon probable cause. Even viewing the facts in the light most favorable to Plaintiff, and thus assuming that Officer Day did not witness Plaintiff committing a traffic violation and that his license plate was eventually determined to be invalid, Plaintiff's Amended Complaint still alleges that, at the time Officer Day initiated a stop of his vehicle, he believed that his license plate was invalid. (Am.

7

Compl. ¶ 9). Tennessee law requires drivers of motor vehicles to comply with the provisions of Title 55 of the Tennessee Code Annotated, including the maintenance of valid and visible license plates. Tenn. Code Ann. §§ 55-4-104, 110. Even if Officer Day ultimately determined after initiating a traffic stop of Plaintiff's vehicle that his license plates were valid, if at the time he initiated the stop he believed that the licence plates were invalid, he had probable cause to initiate the stop. *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010). Accordingly, it is recommended that Count I of Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

### B. Count II

Count II of Plaintiff's Amended Complaint alleges that "known and unknown" Defendant Officers, "including but not limited to" Officer Day, effectuated a false arrest without probable cause in violation of state law and the Fourth Amendment to the United States Constitution. (Am. Compl. ¶¶ 32-33). Plaintiff fails to allege any state law that he believes Officer Day violated. Further, the Court has already considered whether Plaintiff's Amended Complaint sets forth a violation of the Fourth Amendment in its consideration of Count I and, for the reasons set forth above, recommends that it does not. Accordingly, it is recommended that Count II of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

### C. Count III

Count III of Plaintiff's Amended Complaint alleges that "known and unknown" Defendant Officers, "including but not limited to" Officer Day, violated the laws of the State of Tennessee by arresting him without probable cause and fraudulently commencing and continuing a criminal

proceeding against him. (Am. Compl. ¶¶ 34-36).

An action for malicious prosecution under Tennessee law requires allegations that a criminal proceeding has been instituted by the defendant against the plaintiff, that the proceeding terminated in favor of the accused, that there was an absence of probable cause for the proceeding, and that there was malice or a primary purpose other than that of bring the person to justice. *Kerney v. Aetna & Sur. Co.*, 648 S.W.2d 247, 250-51 (Tenn. Ct. App. 1982) (citing *Landers v. Kroger Co.*, 539 S.W.2d 130, 131-32 (Tenn. Ct. App. 1976)). "Probable cause is the linchpin of malicious prosecution." *Carter v. Baker's Food Rite Store*, 787 S.W.2d 4, 6 (Tenn. 1989) (citing *Kearney*, 648 S.W.2d at 247). "The issue of whether there was probable cause for commencement of prosecution turns on whether good and reasonable grounds existed for the prosecutor to believe that the accused was really guilty." *Carter*, 787 S.W.2d at 6 (citing *Sullivan v. Young*, 678 S.W. 2d 906, 912 (Tenn. Ct. App. 1984)). However, "an action for malicious prosecution cannot lie where the pleadings fail to allege material facts which would constitute grounds or otherwise state a claim for such an action." *Sue Ann Soard v. Michael Wayne Brooks*, 1990 WL 55850, at *5 (Tenn. Ct. App. May 3, 1990).

Plaintiff has not alleged that any of the named Defendants initiated a case against him. Although Plaintiff's Amended Complaint names Weirich, Shelby County District Attorney, as a Defendant, he does not allege that she initiated a criminal prosecution against him. Absent allegations of the charges supposedly brought against Plaintiff, Plaintiff cannot proceed with a malicious prosecution claim. Accordingly, it is recommended that Count III of Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

9

### D. Count IV

Count IV of Plaintiff's Complaint alleges that "known and unknown" Defendant Officers, "including but not limited to" Officer Day, committed breach of contract when they violated his "right to due process under the Fourth [sic] Amendment to the United States Constitution." (Am. Compl. ¶¶ 37-38). Plaintiff has not set forth, nor is the Court aware, of any cognizable claim for breach of contract based upon an alleged violation of the United States Constitution. Accordingly, it is recommended that Count IV of Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

### E. Count V

Count V of Plaintiff's Amended Complaint alleges that Mayor Wharton violated Section 1983 when he "caused and participated in the deprivation of the constitutional rights." (Compl. ¶ 39). Plaintiff alleges that Mayor Wharton "was aware that the City maintained a widespread and settled policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and otherwise control its police officers." (*Id.* ¶ 40). Plaintiff further alleges that Mayor Wharton was "aware that the maintenance of these practices would result in preventable police misconduct, specifically, widespread false arrest and malicious prosecution of innocent Hebrew Minister during exercise of the right to travel." (*Id.*) Plaintiff claims that Mayor Wharton "oversaw, endorsed, condoned and acquiesced in the above-mentioned policies, practices and customs and refused to take steps to correct them." (*Id.* ¶ 41). He states that Mayor Wharton was aware "that the practice of arresting the Hebrew Minister during exercise of the right to travel" has resulted in "widespread constitutional deprivation." (*Id.*) Plaintiff claims that Mayor Wharton has been deliberately indifferent to his rights and has "caused and facilitated the systemic denial" of his rights. (*Id.* ¶¶ 42-

10

43).

As set forth above, to plead a Section 1983 claim requires allegations of the deprivation of a right secured by the Constitution or laws of the United States by a person acting under color of state law. *Tahfs*, 316 F.3d at 590. Plaintiff has not specifically alleged the deprivation of any right secured by the Constitution or laws of the United States. While Plaintiff purports to assert his constitutional "right to travel," which he further discusses later in his Amended Complaint (Am. Compl. ¶¶ 79-85), he cites authorities generally restricting a person's freedom of travel throughout the United States. *See, e.g., Dunn v. Blumstein*, 405 U.S. 330, 338 (1972) (citing cases). However, Plaintiff has confused the constitutional right to travel with the qualified privilege to drive an automobile. *George Taylor Duncan v. Linda Cone*, No. 00-5705, 2000 WL 1828089, at *2 (6th Cir. Dec. 7, 2000). "A burden on a single mode of transportation simply does not implicate the right to interstate travel." *Id*. Traffic citations for offenses while driving an automobile in violation of the law do not impinge upon a person's constitutional right to travel. *See, e.g.*, *Steven Ray Murphy v. Ryan Koster*, No. 5:10 CV 2095, 2010 WL 5147215, at *5 (N.D.Ohio Dec. 13, 2000). Accordingly, it is recommended that Count V of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915 against Mayor Wharton.

### E. Counts VI-VIII

Count VI of Plaintiff's Amended Complaint alleges that the City "was the employer of the officers involved in assault . . . at the time of the incident" and that the City is liable under *Monell v. Dep't of Soc. Srvs. of City of New York*, 436 U.S. 658 (1978) (*Id.* ¶¶ 44-45). Count VII alleges the same, and Count VIII alleges that the City is liable under the doctrine of *respondeat superior*. (*Id.* ¶ 47). However, the *Monell* Court does not permit municipal liability solely for employing a

11

party:

> Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell*, 436 U.S. at 691. Accordingly, as Counts VI-VIII against the City are based solely upon their employment of alleged tortfeasors, and as Section 1983 does not permit such actions, it is recommended that Counts VI-VIII fail to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

### F. Count IX

Count IX of Plaintiff's Amended Complaint alleges that the City has a "custom, practice, and policy" of having its officers "uniformly issue citations in violation of Tennessee Statutory law in order to secure millions of dollars in revenue." (Am. Compl. ¶¶ 48-49).[4] Plaintiff alleges that this has resulted in the deprivation of his rights "secured by Tennessee common law, the Tennessee Constitution, and the First and Fourth Amendments to the United States Constitution" and that he has been "maliciously prosecuted." (*Id*. ¶ 50). Plaintiff also requests class action certification on this count pursuant to Rule 23 of the Federal Rules of Civil Procedure.

As stated above, one of the requirements of successfully pleading a Section 1983 claim is the deprivation of a right secured by the Constitution or the laws of the United States. *Tahfs*, 316 F.3d at 590. To allege a 1983 claim against a municipality, Plaintiff must plausibly allege that his constitutional rights were violated and that a policy or custom of the municipality was the "moving

---

[4] Plaintiff additionally alleges various customs, practices, and policies of the City in other portions of his Amended Complaint. (Am. Compl. ¶¶ 26-29).

force" behind the deprivation of Plaintiff's rights. *Miller v. Sanilac Cty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (citing *Monell v. Dep't of Soc. Srvs. of City of New York*, 436 U.S. 658, 694 (1978)).

Even taking Plaintiff's allegations as true, the City's alleged policy of issuing traffic citations to increase revenue does not implicate his First Amendment rights, as he does not allege that his actions were "necessary for—or at all related to—the practice of his religion." *Barhite v. Caruso*, 377 Fed. Appx. 508, 510 (6th Cir. 2010). The alleged policy also does not implicate his Fourth Amendment rights, as he does not allege that any seizure or search was a result of the revenue-increasing scheme. Finally, as the Court has already noted, Plaintiff's allegations do not implicate the constitutional right to travel. Accordingly, it is recommended that Count IX of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915 against all Defendants.[5]

### G. Count XI[6]

Count XI of Plaintiff's Amended Complaint alleges that all Defendants violated 18 U.S.C. Section 241 when they "conspired to injure, oppress, threaten and/or intimidate the plaintiff during the free exercise of the plaintiff's right to travel." (Am. Compl. ¶ 58). Plaintiff alleges that Defendants "unreasonably initiated physical assault on the plaintiff to aid in the enactment of the not consented detention of the said plaintiff." (*Id.* ¶ 59). Plaintiff alleges that he suffered damages as a result of the "assault, battery, confinement, and unauthorized seizure of the plaintiff[']s

---

[5] As it is recommended that Count IX of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, it is further recommended that Plaintiff's request pursuant to Rule 23 of the Federal Rules of Civil Procedure is moot.

[6] The Court will consider Count X, which requests injunctive relief, at the conclusion of the analysis of Plaintiff's remaining claims.

automobile." (*Id*. ¶ 60).

Title 18 of the United States Code sets forth federal crimes and federal criminal procedure. The Sixth Circuit has concluded that 18 U.S.C. Section 241 provides no private right of action and that a private citizen lacks standing to file a claim under this. *Booth v. Henson*, 290 Fed. Appx. 919, 920-21 (6th Cir. 2008); *United States v. Oguaju*, 76 Fed. Appx. 579, 581 (6th Cir. 2003); *see also Brooks v. Kentucky Community Technical College*, Civil No. 11-CV-425-JMH, 2012 WL 2944456, at *2 (E.D. Ky. July 19, 2012); *Ronald L. Ellis v. Bazetta Police Department*, No. 4:05CV638, 2005 WL 1126731, at *4 (N.D. Ohio April 26, 2005). Accordingly, it is recommended that Count XI of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed against all Defendants.

**H. Count XII**

Count XII of Plaintiff's Amended Complaint alleges that Defendants committed negligence. Plaintiff claims that Defendants "owed plaintiff a lawful/legal duty to exercise at least reasonable care or, in some cases, to conform to a higher standard of care especially as it relates to people of religious freedom (such as the plaintiff)." (Compl. ¶ 61). Plaintiff alleges that Defendants breached their "public duty/contract," which he claims is "To serve and protect." (*Id*. ¶ 62). Plaintiff asserts that he was "damaged as a direct result of the breach and subjected to . . . kidnapping, assault, [and] battery." (*Id*. ¶ 63).

Under Tennessee law, a claim for negligence requires the following: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and, (5) proximate or legal cause. *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005). Count XII of Plaintiff's Amended

Complaint merely contains a formulaic recitation of these elements does not contain sufficient factual matter that, accepted as true, puts Defendants on notice of the claim against them. Accordingly, it is recommended that Count XII of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

## I. Count XIII

Count XIII of Plaintiff's Amended Complaint alleges a claim of tortious interference. In support of this claim, Plaintiff sets forth the following: (1) "Existence of First Amendment"; (2) "Defendant's knowledge of the contract—since 1776"; (3) "Defendant's intentional and unjustified procurement of the contract's breach by attempting to enforce State [Statutes]"; and, (4) "Damage to plaintiff as a direct result." (Compl. ¶¶ 64-67).

Tennessee law recognizes a statutory action for inducement or procurement of a breach of contract under Tennessee Code Annotated Section 47-50-109 and a common law claim for tortious interference with contract. *Cambio Health Solutions, LLC v. Thomas M. Reardon*, Nos. 04-6485, 05-5041, 2007 WL 627834 (6th Cir. Feb. 27, 2007) (citations omitted). Section 47-50-109 provides as follows: "It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto. . . ." Tenn. Code Ann. § 47-50-109. The common law claim for tortious interference with contract requires as follows: (1) a legal contract; (2) Defendants' knowledge of the contract; (3) an intention to induce its breach; (4) malice; (5) breach of the contract; (6) proximate cause of the breach; and, (7) damages resulting from the breach. *Hawkins v. Hart*, 86 S.W.3d 522, 530 (Tenn. Ct. App. 2001).

Plaintiff has not set forth, nor is the Court aware, of any cognizable claim for either

inducement or procurement of a breach of contract or tortious interference with contract based upon an alleged violation of the United States Constitution. Accordingly, the Court recommends that Count XIII of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915 against all Defendants.

### J. Count XIV

Count XIV of Plaintiff's Amended Complaint alleges a claim for violation of 42 U.S.C. Section 14141. Plaintiff alleges as follows: "Defendants' responsibility to acknowledge the unlawfulness of an [sic] governmental authority or agent thereof to engage in patterns or practices that deprives person of rights, privileges or immunities secured or protected by the Constitution or laws of the United States including but not limited to: excessive force, discriminatory harassment, unlawful stops, searches or arrests." (Compl. ¶ 68).

42 U.S.C. Section 14141 allows the Attorney General to obtain appropriate equitable and declaratory relief in a civil action for governmental patterns or practices that result in deprivations of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. 42 U.S.C. § 14141(b). Other courts have held that there is no private right of action under 42 U.S.C. Section 14141. *See Isaac Sefa v. Fayette County Police*, Civil Action No. 11-410-JBC, 2012 WL 2793015, at *1 (E.D.Ky. July 9, 2012); *Cedric Kelly v. City of New Philadelphia*, No. 5:11CV474, 2011 WL 3705151, at *2 (N.D.Ohio August 22, 2011); *CP, ex rel. Powell v. Tennessee*, No. 3:10-CV-126, 2010 WL 2598105, at *2 (E.D.Tenn. June 24, 2010). Further, the plain language of Section 14141 providing the Attorney General with the authority to initiate such actions necessitates that conclusion. Accordingly, it is recommended that Count XIV of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed

pursuant to Section 1915.

### K. Count XV

Count XV of Plaintiff's Amended Complaint alleges various violations of the First Amendment of the United States Constitution. In support of this claim, he alleges the following: (1) that he has a religious belief that "government photo id's [sic]" are "the mark of the beast"; (2) that the actions of the officers who falsely arrested him and processed him under the wrong name were "attempts to place sin on [him] and put [him] at odds with [his] creator Yahweh"; (3) that unnamed officers and the City "have prospered from these actions"; (4) that the action of the officers "led to false imprisonment and demand of money as extortionists for [his] release"; (5) that he was denied medical attention due to his religion; (6) that Sheriff Oldham forced "Yahoshua Yahweh to take medication against [his] religion or face cruel and unusual punishment by being place[d] in solitary confinement"; (7) that Sheriff Oldham violated *Sherbert v. Verner*, 374 U.S. 398 (1963) and the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb, *et seq*. ("RFRA"); (8) that officers "attempted to destroy [his] eternal spirit by processing Yahoshua Yisrael: Yahweh as (AZEZ WESLIN ELLIS) when proper identification was provide[d] to show true identity; (9) that an unnamed officer attacked his "right to have a God Given name" and mocked his God, Yahweh; and (10) that "[t]here is no Contract with Yahoshua-Yisrael:Yahweh and any agent of SHELBY COUNTY or CITY OF MEMPHIS." (Compl. ¶¶ 69-78).

It appears to the Court that Plaintiff intends to pursue a Section 1983 claim for violations of the Free Exercise Clause of the First Amendment and a claim for violations of RFRA. With respect to Plaintiff's Section 1983 claim, a plaintiff "alleging that the actions . . . violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and

17

is sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation and internal quotation marks omitted). Only after this requirement is met does the court proceed to determine whether the actions restricting the practice are valid. *Barhite,* 377 Fed. Appx. at 510.

Plaintiff does not allege how the ability to drive his vehicle without government issued photo identification is "necessary for—or at all related to—the practice of his religion." *Id*. As to the claims regarding his medical treatment and medication and the alleged mocking of his beliefs, Plaintiff likewise has not plead how any these issues impacted his right to freely exercise his religion. *Id*. Absent such a contention, Plaintiff has failed to allege a claim of violation of the Free Exercise Clause. Accordingly, it is recommended that Plaintiff's Section 1983 claim for violation of the First Amendment in Count XV fails to state a claim upon which relief may be granted and should be dismissed against all Defendants.

With respect to Plaintiff's allegations under RFRA, the United States Supreme Court struck down RFRA as applied to the states and local governments, holding that it was outside the scope of Congress's enforcement powers under Section 5 of the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). In the instant case, Plaintiff seeks to pursue sue an RFRA claim against a local government and its official. Accordingly, it is recommended that Plaintiff's RFRA claim in Count XV fails to state a claim upon which relief may be granted and should be dismissed against all Defendants.

**L. Count X**

Finally, Plaintiff alleges in Count X that he should be granted injunctive relief against all Defendants for their alleged violations of the First and Fourth Amendments to the United States

Constitution and Tennessee law.[7] However, as it is recommended that Plaintiff has failed to state any claims upon which relief may be granted for violations of either the First and Fourth Amendments or Tennessee law, it is recommended that Count X of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed against all Defendants.

## III. Certification of Appealability

Upon the recommendation that Plaintiff's Amended Complaint be dismissed pursuant to Section 1915, the Court must further consider whether it should be recommended that Plaintiff be allowed to appeal this decision in forma pauperis, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Rule 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party has been permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies the pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* It would be inconsistent for the district court does not warrant service on the defendants, yet has sufficient merit

---

[7] Plaintiff additionally requests injunctive relief based upon violations of the Tennessee Constitution; however, Plaintiff's Amended Complaint does not raise any claims based upon the Tennessee Constitution.

19

to support an appeal in forma pauperis. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).

The same considerations that lead to the recommendation that the District Court dismiss the Amended Complaint in this case for failure to state a claim upon which relief may be granted also compel the recommendation that an appeal would not be taken in good faith. Accordingly, it is recommended that the District Court certify pursuant to Rule 24(a) of the Federal Rules of Civil Procedure that any appeal in this matter by Plaintiff is not taken in good faith and that leave to proceed in forma pauperis on appeal be DENIED. It is further recommended that, if Plaintiff files a notice of appeal, he must pay the $455 appellate filing fee in full or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

**DATED** this 3rd day of April, 2014.

>s/ Charmiane G. Claxton
>CHARMIANE G. CLAXTON
>UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**